UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRO-VISION, INC.,

      Plaintiff,

v.

NORMAN SANDERS,

      Defendant.
_____/

Case No. 1:14-CV-519

HON. GORDON J. QUIST

## ORDER DISMISSING CASE AND AWARDING PLAINTIFF SANCTIONS FOR DEFENDANT'S FAILURE TO ATTEND SETTLEMENT CONFERENCE

Plaintiff, Pro-Vision, Inc, filed a complaint in this Court on May 9, 2014, alleging claims of breach of contract, violation of the Uniform Trade Secrets Act, and accounting against Defendant Norman Sanders, a former employee of Pro-Vision. Pro-Vision's claims were based, primarily, if not exclusively, upon its factual allegations that Sanders had resigned his employment with Pro-vision on April 11, 2014 and, at that time, announced that he had accepted an offer of employment with a competitor. (Dkt. # 1 at Page ID#3.) Although Pro-Vision did not identify the alleged competitor in its complaint, it is undisputed that the alleged competitor was Rosco, Inc. In its breach of contract claim, Pro-Vision alleged that Sanders had performed services for, and/or had disclosed Pro-Vision's trade secrets to, Rosco, Inc. and that Sanders intended to commit future breaches of his Employment Agreement with Pro-Vision by performing services for Rosco, Inc. and disclosing Pro-Vision's trade secrets to Rosco, Inc. (*Id.* at Page ID#3–4, ¶¶ 11–12.) In connection with its trade secrets claim, Pro-Vision alleged that Sanders had disclosed its trade secrets to unspecified persons and that he would inevitably disclose trade secrets if he obtained employment with Rosco,

Inc. (*Id.* at Page ID#5.) Pro-vision requested a preliminary injunction, but did not file a motion for a preliminary injunctive relief seeking to preclude Sanders from working for Rosco, Inc. Moreover, Pro-Vision has never moved for injunctive relief to prohibit Sanders from working for Rosco, Inc. or any other employer that Pro-Vision deems a competitor.

Prior to filing this case, Pro-Vision filed a complaint against Sanders in state court based on the same conduct at issue in the instant case. That case was assigned to Judge Christopher Yates. Although Sanders was represented by an attorney in negotiations in the state-court case, Sanders's counsel never entered an appearance. On May 5, 2014, while the state-court case was pending, Rosco, Inc. formally withdrew its offer of employment to Sanders based on its policy of not hiring individuals who are subject to non-compete agreements with their former employers. (Dkt. # 13-1 at Page ID#79.) Sanders's counsel advised Pro-Vision's counsel of this fact the same day. (*Id.* at Page ID#88.) On or about May 8, 2014, Pro-Vision dismissed its state-court case without prejudice. In spite of Sanders's counsel's representation that Rosco, Inc. had withdrawn its offer, and with no evidence to the contrary, Pro-Vision filed its complaint in this case the following day, alleging that Sanders intended to perform services for Rosco, Inc.

On July 9, 2014, the Court held a hearing on Pro-Vision's motion for a preliminary injunction seeking an order preventing Sanders from publicly disclosing Pro-Vision's trade secrets and/or confidential information.[1] During the hearing, the Court questioned Pro-Vision's counsel about Pro-Vision's reason for dismissing the state-court action and re-filing in federal court. Pro-Vision's counsel cited some unidentified information that Sanders allegedly provided that was inaccurate, as well as the "greater flexibility" and "greater enforceability" that this Court would

---

[1] Although the Court initially ordered that Sanders's answer and accompanying documents be filed under seal, (dkt. # 10), it later concluded that the documents Sanders filed with the Court did not contain confidential business information or trade secrets and ordered such documents unsealed. (Dkt. # 48.)

provide in the event third parties had to be brought into the case, as justifications for dismissing the state-court case and refiling in this Court. (Dkt. # 87 at Page ID#433.) The Court also questioned Pro-Vision's counsel about Rosco, Inc.'s withdrawal of its offer, and counsel conceded that Pro-Vision had no evidence that Rosco, Inc. had not withdrawn its offer. (*Id.* at Page ID#434.)

On August 5, 2014, the Court issued an Order to Show Cause which, in part, directed Pro-Vision to explain why, if Rosco, Inc. had in fact withdrawn its offer, Pro-Vision would have Article III standing to seek injunctive relief and/or why Pro-Vision's request for injunctive relief would not be moot. On August 19, 2014, Pro-Vision filed a response, in which it argued that it had reason to believe that Sanders was seeking, or would seek, employment with other competitors and that Sanders's disregard for his obligations under the Employment Agreement demonstrated that he would not think twice about disclosing Pro-Vision's trade secrets. In its October 19, 2014 Order, the Court deferred ruling on the issue until Pro-Vision had the opportunity to depose Sanders about his efforts to obtain employment with competitors.[2] On January 16, 2014, Pro-Vision filed a supplemental response to the Court's Order to Show Cause in which it argued that a live controversy remained because Sanders had not provided evidence or assurance that he had ceased his attempts to obtain employment with a competitor of Pro-Vision. Pro-Vision noted that Sanders had sought employment with a Pro-Vision customer or prospective customer (Harlow's Bus Sales, Inc.) after the instant litigation was filed. Pro-Vision also pointed to two other instances in which Sanders applied for—but did not receive—employment with a competitor.[3] Pro-Vision did not cite any evidence that Sanders actually received an offer from a competitor or customer of Pro-Vision. Pro-

---

[2] The Court rejected many of Pro-Vision's arguments supporting its contention that its claim for injunctive relief was not moot. (Dkt. # 48 at Page ID##220–21.)

[3] The Court questions whether one alleged competitor, Hadley Products Corporation, is truly a competitor of Pro-Vision. Pro-Vision's own exhibit shows that Hadley's products focus on vehicle mirrors, which Pro-Vision apparently does not sell, or at least did not sell at the time Sanders applied with Hadley.

3

Vision did state, however, that it discovered that Sanders breached the Employment Agreement by providing a sales lead to a competitor—AngelTrax—while still employed by Pro-Vision. (Dkt. # 72 at Page ID#301.).

On May 4, 2015, the Court issued a second Order to Show cause directing Pro-Vision to address whether its claims based on the non-compete provision were moot in light of the fact that the one-year non-compete period had expired. (Dkt. # 94.) Pro-Vision responded, conceding that its claims for prospective injunctive relief were moot, but arguing that it still had a claim for monetary relief. Pro-Vision stated that Sanders breached his Employment Agreement simply by accepting a position with Rosco, Inc., even though Sanders never provided any services to Rosco, Inc. Pro-Vision also asserted that Sanders breached the Employment Agreement by giving a customer lead to a Rosco, Inc. salesman during Sanders's employment with Pro-Vision. (Dkt. # 95.)

On June 9, 2015, the Court issued an Order dismissing Pro-Vision's claim for injunctive relief and directing Pro-Vision to submit further information in light of its response to the Court's second Order to Show Cause. In the June 9, 2015 Order, the Court rejected Pro-Vision's assertion that Sanders violated the non-compete provision of the Employment Agreement merely by accepting a position with Rosco, Inc., without ever actually doing anything for Rosco, Inc. (Dkt. # 100 at Page ID#525.) The Court also sought further information regarding Pro-Vision's claims and inquired whether Pro-Vision's claim for an accounting remained at issue. (*Id.* at Page ID#526.)

On June 30, 2015, Pro-Vision responded to the June 9, 2015 Order. With regard to the factual basis for its claims, Pro-Vision stated that Sanders breached the Employment Agreement by giving a Rosco, Inc. employee a lead around March 11, 2014, by giving an AngelTrax employee a customer lead on March 27, 2014, and by accepting employment with Rosco, Inc. (which the Court had previously concluded, as a matter or law, was not a breach of the Employment Agreement). Pro-Vision also asserted that it still has a claim for an accounting because Sanders testified that he

4

was sure that he received leads from persons outside of Pro-Vision but was unable to recall the specifics of such leads. Pro-Vision apparently abandoned its trade secrets claim because it did not mention that claim at all.

Based on its familiarity with the proceedings in this case, as well its review of the docket report, in this Court's judgment, Pro-Vision violated Rule 11(b) of the Federal Rules of Civil Procedure when it filed its complaint. In particular, the Court determines that Pro-Vision violated Rule 11(b)(1) because the complaint was not filed for a proper purpose, and that Pro-Vision violated Rule 11(b)(3) because several of Pro-Vision's factual allegations lacked evidentiary support from the outset. First, although Pro-Vision requested preliminary injunctive relief in its complaint precluding Sanders from competing or from breaching the Employment Agreement in any other respect, Pro-Vision never filed a motion for such relief. This Court's experience in these types of cases—involving non-compete and non-disclosure agreements—is that injunctive relief is generally the most important aspect of the suit. In fact, the grant or denial of a request for such relief often drives the resolution of the case. Yet, Pro-Vision never sought such relief before the one-year non-compete period expired. Moreover, one of Pro-Vision's major themes in its complaint was that Sanders had disclosed Pro-Vision's trade secrets to Rosco, Inc., or would disclose Pro-Vision's trade secrets to other competitors. During this litigation, however, other than deposing Sanders, Pro-Vision did not seek discovery from any third party, including Rosco, Inc., to support its allegations that Sanders had disclosed trade secrets.[4] Thus, it appears that rather than filing its complaint for a proper legal purpose, Pro-Vision used this litigation to hold the non-compete provision over Sanders's head to prevent him from seeking employment, even with firms that might only be considered competitors of Pro-Vision in a very remote sense. Second, as noted above, at the time

---

[4] This conclusion is evident from the docket report, which lacks any deposition notices or other indications of discovery directed to third parties.

Pro-Vision filed its complaint, Pro-Vision knew that Rosco, Inc. had withdrawn its offer to Sanders and had no evidence indicting otherwise. Nor did Pro-Vision have any evidence that Sanders had applied with, or received an offer from, another competitor. Similarly, although Pro-Vision alleged, upon information and belief, that Sanders had disclosed trade secrets to Rosco, Inc., there is no indication that this allegation was based on anything more than speculation. Pro-Vision has never identified any evidence supporting such a claim and, based on its June 30, 2015 response, no longer contends that Sanders disclosed trade secrets. In fact, Pro Vision's litigation tactics suggest that the case was merely a "fishing expedition" designed to uncover some sort of claim against Sanders. As noted, Pro-Vision never developed its trade secrets claim, but instead now asserts an unpled claim that Sanders gave customer leads to competitors. Even if such claims were valid, Pro-Vision has never moved to amend its complaint to include such a claim, and it only identified the alleged sales leads as a basis for a claim at the end of the litigation in response to the Court's orders.[5]

Given that Pro-Vision's complaint was nothing more than a "fishing expedition" lacking factual support at the time it was filed, the Court may impose an appropriate sanction. Under these circumstances, the Court concludes that dismissal of Pro-Vision's complaint with prejudice is an appropriate sanction. *See Johnson v. Metromedia Corp.*, No. 92 C 4073, 1993 WL 34819, at *2 (N.D. Ill. Feb. 11, 1993) (dismissing with prejudice claims that amounted to "nothing more than a hapless fishing expedition").

The Court must also consider Sanders's motion for reconsideration of the magistrate judge's Order Awarding Costs (dkt. # 103), which awards Pro-Vision $3,259.00 in attorney fees. The magistrate judge awarded Pro-Vision attorney fees after granting Pro-Vision's motion to compel

---

[5] As for the accounting claim, Pro-Vision says that such claim is now limited to sales leads that Sanders received. However, Sanders testified that he cannot remember the details of such leads. Pro-Vision contends that the Court should require Sanders to search his records to ascertain the details of such leads. However, Pro-Vision could have obtained such records, if they exist, during discovery. Pro-Vision cites no basis for its suggestion that Sanders has any written records of sales leads.

discovery on December 22, 2014. (Dkt. # 63.) Having reviewed the magistrate judge's Order Awarding Costs, the Court finds no reason to conclude that the magistrate judge's order is clearly erroneous. *See* 28 U.S.C. § 636(b)(1)(A). However, in light of the fact that the Court has determined that Pro-Vision's complaint is subject to dismissal as a Rule 11 sanction, the Court concludes that it would be inequitable under the circumstances to allow the award of fees to stand. Accordingly, as part of the Court's sanction, Sanders will be relieved of the obligation to pay Pro-Vision's attorney's fees as set forth in the magistrate judge's July 1, 2015 Order Awarding Costs.

Finally, the Court addresses Sander's failure to attend the July 1, 2015 settlement conference. Although the Court has concluded that Sanders should be relieved of the costs the magistrate judge imposed in connection with Pro-Vision's motion to compel, Sanders's failure to attend the settlement conference presents a different issue. Even though Pro-Vision's claims essentially constituted a "fishing expedition," Sanders was nonetheless subject to this Court's jurisdiction and was not free to disregard its orders. Sanders had ample notice of the July 1, 2015 settlement conference but failed to attend. If Sanders lacked the financial resources to attend the conference in person, he should have sought permission to be excused from attendance in person or to attend by phone by filing a motion with this Court. Sanders did not file such a motion. Moreover, Sanders failed to comply with the other requirements of the magistrate judge's May 22, 2015 Order Regarding Settlement Conference. As a result, Sanders caused Pro-Vision to incur unnecessary attorney fees and the magistrate judge to needlessly to waste time on the matter. Accordingly, the Court concludes that an award of attorney fees to Pro-Vision is an appropriate sanction for Sanders's failure to attend. In connection with its motion to adjourn final pretrial conference (dkt. # 105), Pro-Vision has shown that it incurred $840 in attorney fees and expenses for its counsel's attendance at the conference. In addition, Pro-Vision has indicated that it's counsel spent approximately $874 on preparing the motion to adjourn. Having reviewed the exhibit attached to Pro-Vision's motion, the

7

Court concludes that $240 is a reasonable hourly rate, and that the number of hours incurred for attendance at the settlement conference and on preparation of the motion is reasonable. Accordingly, the Court will award Pro-Vision a total of $1,714 as sanctions for Sanders's failure to attend the settlement conference.

Therefore, for the foregoing reasons.

**IT IS HEREBY ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant is relieved from the magistrate judge's July 1, 2015 Order Awarding Costs.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff $1,714 for attorney's fees and costs as a sanction for Defendant's failure to attend the settlement conference.

This case is **concluded**.

Dated:  August 10, 2015                                  /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE